UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY, | ) ) | |
| Plaintiff and Counter Defendant, | ) ) | |
| | ) | 3:04-cv-0171 RLY-WGH |
| vs. | ) ) | |
| JASPER CITY UTILITY SERVICE BOARD, | ) ) | |
| Defendant and Counter Claimant, | ) ) | |
| | ) | |
| vs. | ) ) | |
| TITAN CONTRACTING, INC., | ) ) | |
| Cross Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the court on Defendant Jasper City Utility Service Board's

("Jasper") Motion for Partial Summary Judgment against Plaintiff Cincinnati Insurance

Company ("CIC").  For the following reasons, Jasper's motion is **granted in part** and

**denied in part**.

**I.     Background**

In April 2000, Jasper hired Commonwealth Engineers, Inc. ("Commonwealth") to

perform preliminary engineering and planning services for a municipal sewer system

project being considered by Jasper, which came to be known as the Division B –

Southwest Sewer Extension Project (the "Project").  After completing the planning phase, Jasper elected to proceed with the Project.  In February 2001, Jasper hired Commonwealth to provide services for the planning and design phases of the Project.

In December 2001, Jasper solicited bids for construction of the Project.  As part of this solicitation process, Jasper made plans and specifications available for bidders' review, ultimately to be incorporated into the contract with the successful bidder (collectively, "the Contract ").  (*See* Exs. A and B to the Complaint).  The Project consisted of installing a collection system and then restoring damage to the site caused during construction of the collection system.

On January 21, 2002, Titan Contracting, Inc. ("Titan") submitted the lowest bid for the Project, $1,514,229.50.  On or about February 18, 2002, Jasper and Titan executed the Contract for construction of the Project, in accordance with Titan's bid.  At that time Titan also provided Jasper with a performance bond and payment bond executed by Titan as principal and CIC as surety.  (Ex. 4 to Hemmerlein Aff.).  On March 5, 2002, Titan was issued a notice to proceed.

The Contract between Jasper and Titan included a liquidated damages section that allowed for five hundred dollars per day "in the case the work is not completed either substantially or fully within the above deadlines to the satisfaction of [Jasper] . . . The liquidated damages apply to the failure to meet either the substantially complete and/or the fully complete deadlines stated above."  (Ex. B to Answer at P-7).  Following a change order, the deadlines for the Project were October 26, 2002 for substantial

2

completion and November 25, 2002 for full completion.  (Ex. 6 to Hemmerlein Aff.).

The substantial completion date is "[t]hat date certified by the ENGINEER when the

construction of the PROJECT or a specified part thereof is sufficiently completed, in

accordance with the CONTRACT DOCUMENTS, so that the PROJECT or specified part

can be utilized for the purposes for which it was intended."  (General Conditions ¶ 1.22

(Ex. 2 to Hemmerlein Aff.)).

On October 22, 2002, Titan provided Commonwealth with a schedule that showed

delayed substantial and final completion of the Project.  By December 2002, weather

conditions had deteriorated to the point that the restoration segment of the Project had to

be rescheduled for spring 2003.  On December 17, 2002, after discussing the situation

with Jasper, Commonwealth sent a letter to Titan advising that liquidated damages were

being assessed for the delays.  (Schmitt Aff. ¶ 8).

On February 13, 2003, Commonwealth certified February 6, 2003 as the

substantial completion date for the collection system.  The restoration portion of the

Project was expressly excluded from Commonwealth's certification.  (Ex. 7 to Tinkle

Aff.).  In March 2003, Commonwealth attempted to contact Titan concerning completion

of the restoration.  Meanwhile, Commonwealth started receiving calls from some of

Titan's subcontractors and suppliers about outstanding bills related to the Project owed by

Titan.

On April 3, 2003, Commonwealth sent a demand letter to Titan demanding

completion of the work.  On April 10, 2003, Jasper received a letter from Titan advising

3

that future payments should be made to CIC.  (Ex. 7).  Titan had on-and-off insurance coverage in April, and on May 9, 2003 Titan's insurance was cancelled for non-payment of the premium.  (Ex. 10).  The Contract required that Titan maintain insurance coverage. (Ex. 2).

On May 12, 2003, Commonwealth received a letter from Titan advising that Titan's liability insurance had expired.  The letter explained that CIC would be taking some time to determine whether CIC would assist Titan in completing the work or would hire a third party.  (Ex. 10).  That same day, Jasper's Utility Service Board held a meeting and authorized and mailed a ten day notice of termination to Titan and CIC.

In August 2003, CIC hired completion contractors to continue the Project.  The work on the Project was completed in June 2004.  CIC filed suit against Jasper in October 2004, alleging wrongful termination, impairment of collateral, breach of contract, and waiver of liquidated damages.  Jasper has since filed a counterclaim against CIC and a crossclaim against Titan.  In the instant motion, Jasper seeks partial summary judgment on several issues relating to CIC's claims and defenses.

## II.    Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material if it is outcome determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine "only

4

when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999).

When deciding whether a genuine issue of material fact exists, the court must "draw all inferences in the light most favorable to the non-movant. But in so doing, we draw only reasonable inferences, not every conceivable inference." *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987) (internal citation omitted). The moving party bears the burden of demonstrating the "absence of evidence on an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party may not, however, simply rest on the pleadings, but must demonstrate by specific factual allegations that a genuine issue of material fact exists for trial. *Celotex*, 477 U.S. at 322.

## III.   Analysis

Jasper seeks partial summary judgment on a total of five issues relating to CIC's claims and defenses. Jasper asks the court to find that: (1) the liquidated damages clause is not a penalty; (2) the liquidated damages claim was not waived; (3) no notice duties existed, so none were violated; (4) termination was not wrongful; and (5) CIC's overpayment-impairment theory is not applicable.

## A.   The Liquidated Damages Clause Is Not a Penalty

Jasper seeks summary judgment that the liquidated damages clause in the Contract is valid and enforceable. CIC claims that it is an unenforceable penalty rather than a valid liquidated damages clause.

"The term 'liquidated damages' applies to a specific sum of money that has been expressly stipulated by the parties to a contract as the amount of damages to be recovered by one party for a breach of the agreement by the other, whether it exceeds or falls short of actual damages." *Time Warner Entertainment Co., L.P. v. Whiteman*, 802 N.E.2d 886, 893 (Ind. 2004) (citations omitted).  The enforceability of a liquidated damages clause depends on whether, "in the event of a breach, the damages resulting from the breach would have been difficult to ascertain." *Id*.  Further, "[w]here the sum stipulated in the agreement is not greatly disproportionate to the loss likely to occur, the provision will be accepted as a liquidated damages clause and not as a penalty . . . . *Gershin v. Demming*, 685 N.E.2d 1125, 1128 (Ind. Ct. App. 1997).  Whether a liquidated damages clause is valid, or is an invalid penalty, is a question of law.  *Id*.

The court finds that the precise costs associated with delayed completion of the Project would have been difficult to determine at the time that the Contract was entered into.  (Tinkle Aff. ¶¶ 11-13).  However, five hundred dollars a day was a reasonable amount, not greatly disproportionate to the loss likely to occur.  *See, e.g.*, *Miami Valley Contractors, Inc. v. Town of Sunman, Ind.*, 960 F.Supp. 1366, 1376 (S.D.Ind. 1997) (Barker, C.J.) ("a $500 liquidated damages provision is 'the standard in the industry'").  Therefore, the court finds that the liquidated damages clause is not a penalty and is enforceable.

**B.    The Liquidated Damages Claim Was Not Waived**

CIC next argues that Jasper waived its rights under the liquidated damages clause

6

by delaying its termination of Titan.  The original substantial completion date in the

Contract was October 26, 2002, but Jasper did not contact CIC about the delayed

completion until April 14, 2003 and did not terminate the construction contract until May

12, 2003.  CIC argues that "Jasper's delay in terminating its contract with Titan []

allowed a disproportionate amount of 'liquidated damages' to accrue," and that such

delay acted as a waiver of Jasper's right to seek liquidated damages.  (Response at 25).

Waiver is the "intentional relinquishment of a known right involving both

knowledge of the existence of the right and the intention to relinquish it."  *City of*

*Indianapolis v. Twin Lakes Enterprises, Inc.*, 568 N.E.2d 1073, 1077 (Ind. Ct. App.

1991).  Mere silence or inactivity does not constitute a waiver.  *Rogier v. American*

*Testing & Eng'g Corp.*, 734 N.E.2d 606, 620 (Ind. Ct. App. 2000).

"Whether there has been a waiver of a contract provision is ordinarily a question of

fact."  *van de Leuv v. Methodist Hosp. of Indiana, Inc*., 642 N.E.2d 531, 533 (Ind. Ct.

App. 1994).   In this case, however, CIC's argument for waiver cannot possibly be

supported by the facts of record.  Titan was informed of the liquidated damages at issue

on a regular basis, through Commonwealth's letters to Titan dated October 25, 2002,

December 17, 2002, and April 10, 2003.  (Response at 7).  "Evidence of intent not to

waive materiality of a breach may be found either in an express reservation of rights or in

an expression of intent to assess liquidated damages."  5 Bruner & O'Connor

*Construction Law* § 18:18 (2006).  Commonwealth's letters put Titan on notice that

liquidated damages were accruing.  The fact that Jasper waited until the Project was

7

completed to assess the damages does not amount to a waiver.  *See Alpine Constr. Co. v. Water Works Bd. of Birmingham*, 377 So.2d 954, 955 (Ala. 1979) ("liquidated damages, under the contract here, presupposed in fact such continuation [of work]").  Therefore, summary judgment that the liquidated damages clause was not waived is appropriate.

## C.    No Notice Duties Existed, So None Were Violated

Jasper first gave CIC written notice of Titan's default on April 14, 2003.  CIC argues that Jasper's failure to notify CIC at an earlier date constitutes a breach of Jasper's duties to CIC.  In the Contract that Jasper is accused of breaching, there are no notice provisions.  As such, CIC does not argue that Jasper violated the terms of the Contract itself, but rather argues that the timing of Jasper's notice was "unreasonable."  (Response at 28).[1]

This argument has been rejected by Indiana courts.  In *Chrysler Corp. v. Hanover Insurance Co.*, the Indiana Court of Appeals explained: "The major contention by defendant . . . is that plaintiff's failure to give notice of ITA's default . . . released defendant from its liability to plaintiff under the bond.  Defendant's argument might have

---

[1]   In support of the proposition that Jasper was obligated to give "reasonable" notice of Titan's default, CIC cites the unpublished Fourth Circuit opinion of *Siegfried Construction v. Gulf Insurance Company*.  2000 WL 123944 (4th Cir. 2000).  Upon review, *Siegfried Construction* is only indirectly related to CIC's argument.  In that case, the Fourth Circuit *reversed* a district court's finding that a surety was not given reasonable notice of the default at issue.  *Id*. at *6.  The language of the *Siegfried Construction* opinion quoted by CIC – "reasonable notice of the principal's default" – does not exist.  Furthermore, the page number referenced (17) refers to *Franklin v. Texarkana Police Dep't*, a case which has to do with an appeal based on qualified immunity, a topic not at issue here. 2000 U.S. App. LEXIS 17 (8th Cir. 2000); *see* Response at 29.

some merit if we were at liberty to re-write the bond which it issued.  Lacking that liberty, we reject the argument . . . ."  *Chrysler Corp. v. Hanover Ins. Co.*, 350 F.2d 652, 655 (Ind. Ct. App. 1965).  The Court concluded that "Defendant cannot now impose a burden of notice upon plaintiff which is not expressly required by the bond."  Likewise, in the case at bar, CIC cannot now impose a burden of notice upon Jasper.

### D.     Termination May Have Been Wrongful

CIC argues that Jasper's termination of its contract with Titan was wrongful because it took place after the date of substantial completion.  The record reflects that the collection system was substantially completed on February 6, 2003.  However, the restoration portion of the Project was excluded from Commonwealth's February 6 certification of completion for the collection system.  (Ex. 7 to Tinkle Aff.).  The restoration portion of the Project accounted for seven percent of its total value.

"The doctrine of substantial performance applies when performance of a nonessential condition is lacking, so that the benefits received by a party are far greater than the injury done to him by the breach of the other party."  *Zemco Mfg.*, 270 F.3d at 1126.  Additionally, "[a] project should be considered substantially completed when it is capable of being used for its intended purpose."  *Kinetic Builder's,* 226 F.3d at 1315 (Fed. Cir. 2000).  Whether a contract has been substantially completed is a question of fact. *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp*., 270 F.3d 1117, 1126 (7th Cir. 2001) ("Whether a party substantially performed its contractual obligations generally poses a question of fact."); *Kinetic Builder's, Inc. v. F. Whitten Peters*, 226 F.3d 1307, 1315 (Fed.

Cir. 2000) (same).

In the case at bar, Jasper argues that the restoration phase of the Project cannot be construed as "nonessential," while CIC argues that once the collection system was substantially complete, the Project was "capable of being used for its intended purpose." The court finds that CIC has raised an issue of fact regarding whether the Project as a whole was substantially complete prior to Jasper's termination of Titan. Consequently, summary judgment will be denied on this point.

**E.    CIC's Overpayment-Impairment Theory is not Applicable.**

Finally, Jasper seeks summary judgment that CIC's overpayment-impairment theory is inapplicable to the case at bar. CIC contends that Jasper impaired CIC's collateral by making payments to Titan for work that had not yet been done, had not been completed, or was defective. Without citing any legal authority, CIC argues that Jasper's "payments acted as an impairment on the collateral, greatly limiting the rights Cincinnati received from Titan to recover for the damages under the contract of suretyship with Titan." (Response at 34).

The overpayment-impairment rule applies to cases where payments have been made that were contractually prohibited. It does not apply to payments made in accordance with the contract in question. The rule is therefore inapplicable to the case at bar. *Compare Argonaut Ins. Co. v. Town of Cloverdale, Ind.*, 699 F.2d 417, 420 (7th Cir. 1983) (finding in favor of town and against insurance company based on contract language that "no payment . . . final or otherwise, shall operate to release the Contractor

10

or his Sureties from any obligation upon or under this contract or the Contractor's Bond")
*with* Ex. 2 to Hemmerlein Aff. at GC-16 (Contract) ("Any payment, however, final
or otherwise, shall not release the CONTRACTOR or its sureties from any obligations
under the CONTRACT DOCUMENTS or the Performance and Payment BONDS.").

## IV.    Conclusion

For the foregoing reasons, the court holds that the liquidated damages clause in
this case is not a penalty, that the liquidated damages clause was not waived, that no
notice duties existed, and that CIC's overpayment-impairment theory is inapplicable.
However, CIC has raised an issue of material fact regarding substantial completion.
Therefore, Jasper's Motion for Partial Summary Judgment (Docket #25) is **granted in
part** and **denied in part**.


Dated:  August 24, 2006.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Electronic copies to:

Raymond A. Basile
HARRISON & MOBERLY
basile@h-mlaw.com

Robert James Hoffman
HARRISON & MOBERLY
rhoffman@h-mlaw.com

Timothy D. Martin
ALBER CRAFTON
tmartin@albercrafton.com

Gene F. Zipperle Jr.
ALBER CRAFTON PSC
zipperle@albercrafton.com

Copy To:

Thomas E. Crafton
ALBER CRAFTON, PSC
Hurstbourne Place, Suite 1300
9300 Shelbyville Road
Louisville, KY 40222